IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GIUSEPPE M. ALDINA, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-1957 (RDA/IDD) |
| ) | |
| THE MERIDIAN GROUP DC, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants Meridian Group DC LLC and Grant Kamins' Motion to Dismiss (Dkt. 7). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with the Complaint (Dkt. 1), Defendants' Memorandum in Support (Dkt. 8), Plaintiffs' Opposition (Dkt. 12), and Defendants' Reply Brief (Dkt. 13), this Court GRANTS-IN-PART and DENIES-IN-PART the Motion for the reasons that follow.

I. BACKGROUND

A. Factual Background[1]

Plaintiff Giuseppe Aldina obtained his undergraduate degree from Tufts University and his Masters of Business Administration degree from the University of Warwick with a concentration in global energy issues. Dkt. 1 ¶ 8. Since 2006, Aldina has worked in the energy sector in positions

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

that included the trading of energy commodities and advising corporate and governmental clients on various energy issues. *Id.* ¶ 9.

In January 2023, Aldina began working for Defendant Meridian Group DC LLC ("Meridian") as an Energy Project Finance Specialist. *Id.* ¶ 10. In this role, Aldina worked in support of a sub-contract that Meridian held with Deloitte Consulting LP in support of a prime contract with the U.S. Navy. *Id.* Aldina provided support to the Office of the Assistant Secretary of the Navy for Energy, Installations, and Environment ("OASN EI&E"). *Id.* Aldina performed his job well and received praise from high-ranking Navy personnel. *Id.* ¶ 11.

During his time working in support of the Navy, Aldina created an online data tool – the Energy & Water Analysis Tool ("EWAT"). *Id.* ¶ 12. In June 2024, the Office of the Secretary of Defense ("OSD") committed to providing funds for completion of the second and third versions of EWAT, with a total funding amount of $500,000 for fiscal year 2024 and a possible additional $500,000 for fiscal year 2025. *Id.* ¶ 13. Senior leaders within the Navy wanted Aldina to run and complete the EWAT project because of the outstanding service Aldina had provided. *Id.* ¶ 14.

Because of applicable contractual rules, the Navy was preparing to award the bulk of this additional funding ($400,000) to another contractor (EMI Advisors LLC). *Id.* ¶ 15. Two senior Naval officials, however, wanted to reserve $100,000 of that funding for Meridian so that it could specifically pay one year's worth of overtime to Aldina for his work on EWAT. *Id.* ¶ 15. Plaintiffs assert that the "Navy's intentions relating to Mr. Aldina are documented in an email from Government Official 1 as of 4:39 pm [sic] on July 29, 2024." *Id.*[2] No such email is attached to or summarized within the Complaint.

---

[2] The Court accepts, for purposes this current stage of proceedings, Plaintiffs' references to "Government Official 1" and "Government Official 2." The Court notes that Plaintiffs do not hide the names of all of the government officials discussed in the Complaint. To the extent that

That same evening, less than two hours later, at 6:19 p.m., Defendant Grant Kamins, the principal member and Principal of Meridian, called Aldina to discuss his meeting with Government Official 1 that day and whether the $100,000 in funding would be made available for Aldina's overtime hours. *Id.* ¶ 17. Aldina told Kamins that, per the direction of Government Official 1 and Government Official 2, the additional funds ($100,000) would be put in the Navy's contract to pay for Aldina's expected overtime hours. *Id.* Aldina told Kamins that he would like to receive the majority of the $100,000 because it had been specifically earmarked to pay for the overtime hours that he would be expected to work and because such overtime would impinge on his personal time. *Id.*

Aldina proposed that he be paid $85,000 of the $100,000 in funding. *Id.* ¶ 18. Aldina explained that he felt that this level of compensation was appropriate in return for 12 hours of overtime each week. *Id.* Aldina said that he had put his "heart and soul" into his work and felt that this compensation approach was fair and also that, if this was not agreeable, he would have to decline to work additional, overtime hours. *Id.* Kamins did not react well to Aldina's proposal. *Id.* ¶ 19. Kamins first said that the proposal was "rich" and that he would think about it and have a counter proposal. *Id.* Their call ended. *Id.*

At 7:53 a.m. the next morning, July 30, 2024, Kamins called Aldina. *Id.* ¶ 20. Aldina missed the call and then called Kamins back at 8:04 a.m. *Id.* According to Plaintiffs, "Kamins then erupted." *Id.* ¶ 21. Kamins told Aldina that he had been thinking about the proposed split of the $100,000 and that he felt that Aldina had "crossed a line." *Id.* ¶ 22. Kamins further declared

---

Plaintiffs have used pseudonyms to protect the identities of these officials because these government officials shared information with Aldina that they should not have shared, the Court notes that, such concern does not appear to be a proper basis to keep these government officials' identities from appearing on the public record and likely will not be accepted at later stages of these proceedings.

that Meridian was his business and that Aldina had no right to propose terms to Kamins. *Id.* ¶ 23. After Kamins became more abusive, Aldina hung up the call. *Id.* ¶ 24.

Two minutes later, Kamins called Aldina again. *Id.* Kamins again stated that Meridian was his company and that he would dictate the terms of any deal or that he would stop the funding of the project so that Aldina could not benefit from it. *Id.* ¶ 25. He then said that he would offer to pay Aldina fifty percent of the $100,000 at issue. *Id.* In response, Aldina declined the offer. *Id.*

Kamins then stated that he would find someone to replace Aldina and tell the client that Aldina would be replaced. *Id.* ¶ 26. Kamins then hung up the phone. *Id.* ¶ 26. Despite the calls with Kamins, Aldina twice offered in emails to continue working for the Navy for two additional weeks to ensure no disruption in service. *Id.* ¶ 28. Kamins declined. *Id.*

Thereafter, Aldina contacted Seamus Ahern and Tadeh Issakhanian of Deloitte and explained that he was leaving Meridian but would like to continue his work for the Navy on Deloitte's contract. *Id.* ¶ 29. Ahern and Issakhanian indicated that they would consider whether they were able to hire Aldina either directly or as an independent contractor. *Id.* Later that day, Government Official 2 wrote an email to Deloitte stating that "Joe does great work" and that hiring him would provide "continuity." *Id.* ¶ 30. Still later, Deloitte informed Aldina that it would hire him through First Ridge Associates, an LLC that Aldina formed in June 2024, based upon the request from the client. *Id.* ¶¶ 4, 31.

On the evening of July 31, 2024, Kamins sent an email to Aldina. *Id.* ¶ 32. That email stated that the Navy wanted them to "work it out" and that he would bring back Aldina as a "1099 employee" at the hourly rate that Aldina had previously been paid. *Id.*

4

On August 1, 2024, Issakhanian asked Aldina to refuse Kamins' offer if he wished to work with Deloitte and, in response, Aldina declined the offer stating that he would serve the client under "a different hat." *Id.* ¶ 33. Plaintiffs allege, upon information and belief, that Kamins knew that Aldina had been offered the chance to work directly for Deloitte through First Ridge Associates. *Id.* ¶ 34.

From August 1 through August 9, 2024, Deloitte conducted, and Aldina passed, a background check, and they also reviewed a contract. *Id.* ¶ 35. Plaintiffs assert that the process was completed, subject to Aldina providing deposit information for First Ridge Associates. *Id.* Plaintiffs assert that, on August 12, 2024, Deloitte personnel told Government Official 2 that they were "ready to pull the trigger" on a contract with First Ridge Associates. *Id.* ¶ 36.

On August 13, 2024, Aldina sent a resume and biography to Issakhanian, who then forwarded the same to government officials at the Navy. *Id.* ¶ 37. Issakhanian asked for the Navy's approval before Deloitte executed the contract for the prime contract. *Id.* Government Official 2 responded to the email that he was excited to have Aldina back. *Id.*

On August 14, 2024, Government Official 2 contacted Aldina and told him that there was a security concern with him serving as a subcontractor to the Navy. *Id.* ¶ 39. Government Official 2 indicated that there was an email that had circulated among the hiring team and the Contractor's Representative indicating that the Deputy Assistant Secretary of the Navy (Energy), Michael McGhee, had "security concerns" regarding hiring Aldina. *Id.* In response, Aldina sent Government Official 2 his security debrief paperwork that he had promptly filled out for Meridian's designated Facility Security Officer after he separated from Meridian. *Id.*

On August 15, 2024, Government Official 2 met with Deputy Assistant Secretary McGhee. *Id.* ¶ 40. During this meeting, Deputy Assistant Secretary McGhee advised Government Official

2 that he had met with Kamins and Walter Ludwig, Chief of Staff for the Deputy Assistant Secretary of the Navy for Energy, on August 12 and that, as a result, McGhee had decided that the Navy should not contract with Aldina. *Id.* Government Official 2 stated that McGhee indicated that he did not believe Kamins' statements, but he felt it was best to proceed with caution and requested a full investigation. *Id.* ¶ 43.

Aldina asked Government Official 2 whether he believed Aldina was a security risk. *Id.* ¶ 44. Government Official 2 replied that he did not and that "Grant did this because had a vendetta against you." *Id.* Plaintiffs assert that, despite this, the damage had been done and that Aldina did not finalize the contract with Deloitte. *Id.* ¶ 46.

Plaintiffs assert two causes of action against both Defendants: (i) tortious interference with contract or a business expectancy; and (ii) defamation.

### B. Procedural Background

On November 1, 2024, Plaintiffs filed their Complaint. Dkt. 1. On December 5, 2024, Defendants filed their Motion to Dismiss. Dkt. 7. On December 20, 2024, Plaintiffs filed their Opposition. Dkt. 12. On December 26, 2024, Defendants filed their Reply. Dkt. 13.

### II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's

6

favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## III. ANALYSIS

Defendants assert that Plaintiffs have failed to state a claim for either tortious interference or defamation. The Court will analyze each count in turn.

### A. Tortious Interference

It is well-settled that, in Virginia, the elements of a tortious interference with contract claim are: (i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or causing the breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted. *Ass'n for Supervision & Curriculum Devel., Inc. v. Int'l Council for Educ. Reform & Dev., Inc., et al.*, 2011 WL 1225750, at *9 (E.D. Va. Mar. 14, 2011) (citing *Century-21 v. Elder*, 239 Va. 637 (1990)). Defendants raise several arguments regarding these elements.

To begin with, Defendants assert that the claim by First Ridge Associates should be dismissed, because Plaintiffs have failed to allege that Kamins knew of the existence of First Ridge

Associates. Dkt. 8 at 3. As noted above, knowledge of the relationship is an element of tortious interference claim. *See Ass'n for Supervision & Curriculum Devel., Inc.*, 2011 WL 1225750, at *9. Because Plaintiffs have failed to allege that Defendants had any knowledge of the existence of First Ridge Associates, Plaintiffs have also failed to allege that Defendants had knowledge of the relationship between First Ridge Associates and Deloitte. Plaintiffs also failed to respond to this argument. *See Evans v. City of Lynchburg*, 766 F. Supp. 3d 614, 618 (W.D. Va. 2025) ("Failure to respond to conspicuous, nonfrivolous arguments in an opponent's brief constitutes a waiver . . . ."). Accordingly, any claim by First Ridge Associates for tortious interference fails and will be dismissed.[3]

Defendant correctly notes that, because no contract was ever executed, Aldina cannot state a claim for tortious interference with a *contract*. Dkt. 8 at 4. Plaintiffs concede as much in Opposition. Dkt. 12 at 4 (focusing on "protectable business expectancy"). Thus, the Court, like the parties, will focus on whether Aldina has stated a claim for tortious interference with a business expectancy.

With respect to interference, Plaintiff must show that the "interfering party employed 'improper methods.'" *Lee Pappas Body Shop, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 3609296, at *6 (E.D. Va. Aug. 13, 2021) (citing *Duggin v. Adams*, 234 Va. 221, 227 (1987)). Improper methods may include the following: "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence,

---

[3] Defendants' argument that First Ridge Associates has failed to state a claim because Defendants did not know of First Ridge Associates existence, raises an interesting legal question that has gone unaddressed by the parties. If the business expectancy was intended to be between Deloitte and First Ridge Associates, does Aldina have a tortious interference claim where he was not going to be a party to the contract but would benefit from the contract as the principal of First Ridge Associates? Because the parties do not address this question and because the tortious interference claim generally fails on other grounds, the Court need not address this question here.

misuse of inside or confidential information, breach of a fiduciary relationship, violation of an established standard of a trade or profession, unethical conduct, sharp dealing, overreaching, or unfair competition." *Preferred Sys. Sols., Inc. v. GP Consulting, LLC*, 732 S.E.2d 676, 688 (Va. 2012). In this regard, Plaintiffs appear to rely on Kamins' assertion that Aldina "quit" and that he sought "an immediate raise of $100,000" as a misrepresentation or defamation that constitutes an improper method.

With respect to the first allegation, that Kamins allegedly lied when he told McGhee that Aldina had quit, Plaintiffs have not plausibly alleged that Kamins lied. The facts alleged in the Complaint are: (i) Kamins told Aldina that Kamins would find someone to replace Aldina and tell the client that Aldina would be replaced; and (ii) Kamins then hung up. Dkt. 1 ¶ 26. Aldina then told Kamins that he would work for Meridian for two more weeks, which Kamins declined, and started acting as if his employment had ended. *Id.* ¶¶ 28-29. Plaintiffs do not allege that Kamins affirmatively told Aldina that he had been fired. Plaintiffs have not alleged that the Navy project for Deloitte was the only project on which Meridian worked such that the Court could reasonably infer that removing Aldina from the project effectively terminated his employment. Although it is clear from the Complaint that Aldina assumed he had been fired, Aldina has not plausibly alleged that he was fired. Accordingly, the Court will grant the Motion on this basis. This omission could be easily remedied, however, and the Court will permit Aldina to amend the Complaint in this regard.

With respect to whether Aldina sought a raise, the facts alleged in the Complaint are that Aldina sought a majority of the funds to be allocated under the contract as remuneration for himself. Dkt. 1 ¶ 18. Indeed, the Complaint affirmatively alleges that he requested to be paid $85,000 of the $100,000 to be allocated to Meridian and that this represented "time and one half

9

above his normal compensation rate." *Id.* Based on the current bare-bones allegations regarding Aldina's compensation, a 1.5 times increase to his regular pay for certain periods of time could fairly be considered a request for a raise. Overall, the Complaint lacks factual allegations with respect to Aldina's overall compensation. Thus, at this time, Aldina has failed to plausibly allege that Kamins' characterization was affirmatively false, but again, Aldina may be able to amend the Complaint in this regard.

A second difficulty with Aldina's tortious interference claim is causation. To allege causation, a plaintiff must plead that a defendant's actions "proximately" caused the end result. *Center for Excellence in Higher Educ., Inc. v. Accreditation Alliance of Career Schs.*, 2023 WL 6282840, at *7 (E.D. Va. Sept. 26, 2023). Here, Plaintiff has affirmatively alleged that McGhee – the apparent decisionmaker at the Navy – did not believe Kamins' statements. Dkt. 1 ¶ 42. Aldina also alleges that McGhee stated that there would be an investigation. *Id.* Furthermore, all of the facts that Aldina alleges in this regard relate to internal discussions within the Navy, but the contract was ultimately with Deloitte. Aldina never alleges whether Deloitte provided him with an explanation for why the contract was not executed. Nor does Aldina offer any explanation for why the Navy would not approve his work for it on the basis of statements that the Navy did not believe to be true. See Dkt. 1 ¶ 43 (alleging that Government Official 2 stated that McGhee indicated that he did not believe Kamins' statements, but he felt it was best to proceed with caution and requested a full investigation). There is a step missing from the causal chain that would permit the Court to infer that the reason why the contract was not executed was because of the statements by Kamins.

In sum, there are some factual deficiencies in the Complaint that preclude the Court from finding (at this point) that Aldina has stated a claim for tortious interference with a business

expectancy. Accordingly, the Motion will be granted in that regard. It appears that such deficiencies may be remedied, however, and the Court will permit further amendment. The Motion will also be granted with respect to First Ridge Associates, because Plaintiffs have failed to allege that Defendants knew of the existence of that entity.[4]

B.  Defamation

To state a claim for defamation under Virginia law, a plaintiff must plead three elements: (i) publication; (ii) of an actionable statement; and (iii) with the requisite intent. *Va. Citizens Defense League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018). To be actionable, a statement must be both false and defamatory; that is, it must "injure one's reputation in the common estimation of mankind, to throw contumely, shame or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt." *Id.* Further, the false statement must "carry the requisite defamatory sting severe enough to subject the plaintiff to contempt, shame, scorn or disgrace." *Bryant-Shannon v. Hampton Rds. Cmty. Action Program, Inc.*, 299 Va. 579, 588 (2021). "[S]tatements can be made that are offensive, unpleasant, harsh, and critical without necessarily constituting defamation." *Id.* But, Virginia law also recognizes "defamation by implication," where statements are "reasonably capable of defamatory meaning." *Spirito v. Peninsula Airport Comm'n*, 350 F. Supp. 3d 471, 482 (E.D. Va. 2018).

As discussed *supra*, at this point, Aldina has not plausibly alleged falsity with respect to the statement that he quit. A claim based on this statement must also fail because courts recognize that a statement that someone "quit" is not capable of defamatory meaning. *See, e.g.*, *BPSS, Inc.*

---

[4] Defendants' other arguments are unpersuasive. To the extent that Defendants attempt to rely on affirmative defenses, the affirmative defenses raised are not properly considered on a motion to dismiss. Additionally, Defendants' arguments that a contract between First Ridge Associates and Deloitte was not the kind of expectancy protected by Virginia law are not well taken.

*v. Wilhold*, 2009 WL 736693 (E.D. Mo. March 18, 2009) (noting the "mere statement that someone has been terminated from employment is not in and of itself defamatory" and further stating because the plaintiff "has failed to plead any facts showing why the statements would be construed as defamatory," the defendant's motion to dismiss was granted); *San Antonio Express News v. Dracos*, 922 S.W.2d 242, 248 (Tex. App. 1996) (holding the statement that someone quit is not actionable as it "does not charge plaintiff with the commission of a crime or the violation of any law. . . [and i]t accuses him of absolutely nothing except what he had a right to do"); *Mann v. City of Tupelo*, 1995 WL 1945433 (N.D. Miss. Apr. 11, 1995) (dismissing plaintiff's defamation claim as the statement "plaintiff voluntarily quit her employment is not one that would expose her to public hatred, contempt or ridicule"). Accordingly, to the extent Plaintiffs attempt to rely on the statement that he quit, such statement is not defamatory.

Similarly, as noted previously, Aldina has further failed to adequately allege that Kamins' statement with respect to a raise are false, especially given that the facts alleged in the Complaint clearly assert that Aldina sought greater compensation. The Court does not find that the statement that Aldina sought a raise is capable of defamatory meaning, especially where he affirmatively alleges that the Navy was trying to find a way to give him that raise. *See* Dkt. 1 (alleging that Navy wanted to reserve $100,000 specifically to pay Aldina).

Aldina fares better with his allegation that Kamins stated that he left "abruptly" and "without notice." The Supreme Court of Virginia has recognized that similar statements are capable of defamatory meaning. *See Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127 (2003) (addressing statements that physicians "left suddenly" and "abandoned" patients). Although the parties did not brief this issue extensively, the Court finds, at the motion-to-dismiss stage, that Aldina has properly alleged that the statements that he left "abruptly" and "without notice" are

12

capable of defamatory meaning.  The Court also finds that the parties have not sufficiently briefed the issue of a qualified privilege held by Meridian or whether *both* Kamins and Meridian can be held liable.  Because those are affirmative defenses, the burden to address those issues rests with Defendants, and the briefing is not sufficient for the Court to find, at this stage of the proceedings, either issue in Defendants' favor.  Accordingly, at this point, the Court finds that Aldina has plausibly stated a claim *only* with respect to the allegation that he left "abruptly" and "without notice," because such statements imply that he abandoned his work.

Thus, the Court will grant in part and deny in part the Motion with respect to the defamation claim.  The Court will grant the Motion with respect to the statements that Aldina sought a raise and the statements that Aldina quit.  At this time, the Court will deny the Motion with respect to the statement that Aldina left abruptly without notice.

## C. Damages

To the extent Defendants seek to dismiss the request for punitive damages, the Motion will be granted, but with leave to amend.  The parties do not delve deeply into the standards applicable to punitive damages.  Plaintiffs' allegations of malice are largely conclusory, and Aldina does not address on what basis punitive damages would be available for his sole remaining claim: that he left abruptly and without notice.  Moreover, it is unclear what damages Aldina has at all in this regard, given that McGhee – the apparent decisionmaker at the Navy – did not believe Kamins statements.  Dkt. 1 ¶ 42.  Aldina also alleges that McGhee stated that there would be an investigation.  *Id.*  Government Official 2 similarly asserted that he did not believe Kamins.  *Id.* ¶ 44.  Accordingly, the Motion will be granted in this regard with leave to amend.

IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 7) is GRANTED-IN-PART and DENIED-IN-PART; and it is

FURTHER ORDERED that that Count I is DISMISSED without prejudice; and it is

FURTHER ORDERED that Plaintiff First Ridge Associates is DISMISSED as a Plaintiff; and it is

FURTHER ORDERED that Count II is DISMISSED only to the extent it relies on the statements that Aldina requested a raise or quit; and it is

FURTHER ORDERED that the request for punitive damages is DISMISSED without prejudice; and it is

FURTHER ORDERED that Plaintiffs have LEAVE TO AMEND and is DIRECTED to file any Amended Complaint within THIRTY (30) DAYS from the issuance of this Memorandum Opinion.  If Plaintiffs do not intend to amend and intend to proceed on the remaining portion of Count II, Plaintiff Aldina is DIRECTED to file a Notice so indicating within THIRTY (30) DAYS from the issuance of this Memorandum Opinion.[5]

It is SO ORDERED.

Alexandria, Virginia
August 21, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[5] To the extent that there is briefing on further motions to dismiss or in relation to other motions, the parties are reminded that the Court appreciates a thorough examination of the issues raised by the opposing party and that, generally, a single paragraph is insufficient to fully address a complex issue.