IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GIUSEPPE MICHAEL ALDINA, *et al.*,      )
                                         )
    Plaintiffs,                         )
                                         )
    v.                                  )      Civil Action No. 1:24-cv-1957 (RDA/IDD)
                                         )
THE MERIDIAN GROUP DC LLC, *et al.*,     )
                                         )
    Defendants.                         )

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. 18) (the "Motion"). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is fully briefed and ripe for disposition. Considering the Amended Complaint (Dkt. 16), the Motion, the Memorandum in Support of the Motion to Dismiss (Dkt. 19), and Plaintiffs' Corrected Response in Opposition to the Motion to Dismiss (Dkt. 22), this Court GRANTS-IN-PART and DENIES-IN-PART the Motion for the reasons that follow.

### I. BACKGROUND

#### A. Factual Background[1]

Plaintiffs Giuseppe Michael Aldina and First Ridge Associates, LLC ("Plaintiffs") have filed the instant case against Defendants Meridian Group DC LLC and Grant Kamins ("Defendants"). Dkt. 16. Aldina is a citizen of the United States residing in the District of Columbia, who previously worked for Defendant Meridian Group DC LLC ("Meridian Group"), a company with its principal place of

---

[1] For purposes of considering the Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

business in Alexandria, Virginia. Dkt. 16 ¶¶ 4, 5, 6. Meridian Group was a subcontractor for Deloitte Consulting LP ("Deloitte") on a contract with the Office of the Assistant Secretary of the Navy for Energy, Installations, and Environment ("the Navy"), and Aldina supported the subcontract with Meridian Group. *Id.* ¶ 10. Aldina founded First Ridge Associates as the sole member in June 2024 to offer consulting services for private sector clients on energy-related issues. *Id.* ¶ 4.

In his work supporting the Navy, Aldina created a digital tool called the Energy & Water Analysis Tool ("EWAT"). *Id.* ¶ 12. In June 2024, the Office of the Secretary of Defense "committed to provide funding" to complete future iterations of EWAT at $500,000 for fiscal year 2024 and potentially an additional $500,000 for fiscal year 2025. *Id.* ¶ 13. Aldina claims that "senior leaders" at the Navy wanted Aldina to finish the EWAT project because of Aldina's "outstanding service." *Id.* ¶ 14. However, due to "applicable contractual rules," the Navy prepared to award most of the money to another contractor and reserve $100,000 of the additional funds for Meridian Group to pay for a year's worth of overtime to Aldina for his work. *Id.* ¶ 15. Aldina alleges that a July 29, 2024 email from Sandrine Schultz, the Navy's Director of Sustainability, reflects this arrangement. *Id.* ¶¶ 15, 16. Aldina asserts that he proposed that Kamins pay him $85,000 of that $100,000 "because it had been specifically earmarked to pay for the overtime hours," but alleges that Kamins "did not react well" to that proposal and said he would mull it over. *Id.* ¶¶ 17, 18, 19.

On the morning of July 30, Kamins and Aldina spoke on the phone, at which point Aldina alleges that Kamins "erupted," saying Aldina's proposal "crossed a line" and that Meridian was "his company" and he would "dictate the terms of any deal." *Id.* ¶¶ 20-22, 25. Kamins then offered to pay Aldina half of the $100,000 in question, Aldina alleges, which Aldina declined. *Id.* ¶ 25. Kamins then said he would "find someone to replace" Aldina and tell the client (presumably Deloitte or the Navy) that Aldina was going to be replaced before hanging up the call. *Id.* ¶ 26. Later that morning, Aldina alleges Kamins "shut down" Aldina's access to company files and email. *Id.* ¶ 29. Aldina "reasoned that Kamins had not just removed him from the EWAT project, but if Aldina was no longer working

on the project, that he would not have enough other work to sustain the full-time salary that Meridian paid him," thus "terminating Aldina's employment relationship." *Id.* ¶ 30. Aldina alleges he offered in emails that day to continue working for the Navy for two weeks to avoid a disruption in service, which Kamins declined. *Id.* ¶ 31.

Aldina then alleges that, on July 30, 2024, Kamins wrote to Navy officials, including Michael Savena (Navy Shore Energy Director), faulting Aldina for an "abrupt" change imperiling current Navy projects and that "Meridian was only notified by Aldina of his immediate departure on that same day." *Id.* ¶ 32. Aldina later contacted senior managers at Deloitte and told them that "because of irreconcilable differences with Kamins," he left Meridian, but wanted to continue working with the Navy. *Id.* ¶ 33. Deloitte managers told Aldina on July 30, 2024, that they would hire him as an independent contractor, based on Savena's request via email. *Id.* ¶ 34, 35.

The next day, Kamins emailed Aldina and indicated that he would bring Aldina back as a "1099 employee" and that the Navy wanted them to "work it out," Aldina alleges. *Id.* ¶ 36. On August 1, 2024, Tadeh Issakhanian, a senior manager at Deloitte, told Aldina that Deloitte had told Kamins that Deloitte would be bringing on Aldina as an independent contractor to work with the Navy. *Id.* ¶ 37. Thus, Aldina argues that "Kamins was acutely aware that Aldina's return to the Office meant that he had a business relationship with Deloitte." *Id.* On August 1, 2024, Aldina declined Kamins' offer and said he would work for the client "under a different hat," which Aldina argues "put Kamins on notice that in so doing, Aldina would do so as an independent contractor." *Id.* ¶ 38. Aldina acknowledges that "Kamins may not have known the name of 'First Ridge Associates'" but claims Kamins "was on notice of the opportunity being offered to Aldina by Deloitte" and that Aldina would pursue it via his own corporate vehicle, a limited liability corporation. *Id.* ¶ 4, 39.

Between August 1 and 9, 2024, Aldina alleges he passed a background check for Deloitte and Deloitte "completed" its contract drafting process with him, pending Aldina providing banking information. *Id.* ¶ 40. On August 12, unspecified Deloitte employees told Savena they were "ready to

3

pull the trigger" on the contract with Aldina and First Ridge Associates. *Id.* ¶ 41. On August 13, Aldina sent a resume to Issakhanian, who sent it to Navy officials, which Aldina alleges is "one of the last steps in the process before a prime contractor, in this case Deloitte, executes a subcontract agreement." *Id.* ¶ 42. Aldina alleges that Savena responded to this email by saying he was excited to have Aldina back. *Id.*

But "on or before" August 9, 2024, Aldina alleges that Kamins made false statements to Walter Ludwig, Chief of Staff for the Deputy Assistant Secretary of the Navy for Energy, that Aldina "extorted" him and the Navy. *Id.* ¶ 42, 44. Aldina further alleges that Kamins "told Ludwig that Aldina had made monetary demands and, if those demands were not met, that Aldina would abandon the EWAT project" and that Kamins "falsely said that Aldina had quit 'abruptly' and 'without notice.'" *Id.* ¶ 44. Ludwig was "alarmed by Kamins' accusations" and arranged a meeting on August 12 with Kamins and Deputy Assistant Secretary Michael McGhee of the Navy. *Id.* ¶ 45. During this meeting, Aldina alleges Kamins "accused Aldina of committing the crime of extortion" and stated that he had "abandoned his role" by "quitting abruptly." *Id.* ¶ 45, 46. "As a result of that meeting," Aldina alleges that McGhee instructed Ludwig to "find a replacement candidate for Aldina," as he was "alarmed by what he heard about Aldina from Kamins," information that Aldina claims is false. *Id.* ¶ 46. Aldina alleges that Savena learned about the events of the August 12 meeting from McGhee in an August 15, 2024 meeting, and later that day told Aldina in a call that McGhee directed there be a "full investigation" as to Kamins's accusations. *Id.* ¶ 50. Aldina further alleges that Savena told him he would not be rehired due to the investigation. *Id.* ¶ 51.

In sum, Aldina alleges that due to "Kamins' false and defamatory statements to McGhee about Aldina (which Kamins made on behalf of himself and Defendant Meridian Group), Kamins triggered a full security investigation into his accusations, sidelining Aldina for months, and directly resulting in Savena ending Aldina's candidacy to return to the Office at the Navy." *Id.* ¶ 55. He argues this has caused him "significant damages," including lost revenue and business opportunities, "significant

4

physical and emotional distress," and reputational damage. *Id.* ¶ 57. Because Aldina alleges that First Ridge Associates would have signed the deal with Deloitte, "Aldina personally suffered economic harm because he solely owned First Ridge Associates, and, as a single member LLC, the corporate entity is a 'pass through' for tax purposes," he alleges. *Id.* ¶ 58. The draft Deloitte contract with Aldina and First Ridge Associates characterized Aldina as self-employed, Aldina alleges, so therefore, "any profits experienced by First Ridge Associates through the subcontract with Deloitte for the continued Navy work would have passed through to Aldina personally, and he lost such money as a direct result of the wrongful and tortious conduct of Kamins and Meridan at issue in this case." *Id.*

### B. Procedural Background

On November 1, 2024, Plaintiffs Aldina and First Ridge Associates filed their original Complaint against Defendants. Dkt. 1. Defendants filed their original Motion to Dismiss for Failure to State a Claim and Memorandum in Support on December 5, 2024. Dkts. 7, 8. On December 20, 2024, Plaintiffs filed a Response in Opposition to the Motion to Dismiss, and on December 26, 2024, Defendants filed a Reply to Plaintiffs' Opposition. Dkts. 12, 13.

On August 21, 2025, this Court issued a Memorandum Opinion and Order dismissing Plaintiff's Count I without prejudice, dismissing Count II to the extent that it relies on the statements that Aldina requested a raise or quit, dismissing First Ridge Associates as a plaintiff, and dismissing Plaintiffs' request for punitive damages without prejudice. Dkt. 14. This Court also granted Plaintiffs leave to amend. *Id.*

On September 20, 2025, Plaintiffs filed their Amended Complaint against Kamins and Meridian Group. Dkt. 16. On October 6, 2025, Defendants filed their Answer, Motion to Dismiss for Failure to State a Claim, and Memorandum in Support. Dkts. 17, 18, 19. On October 20, 2025, Plaintiffs filed their Opposition. Dkts. 21, 22.

### II. LEGAL STANDARD

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. *Id.*  When evaluating a motion filed under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents . . . attached to the motion to dismiss, as long as they are integral to the complaint and authentic[,]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

### III. ANALYSIS

In his Amended Complaint, Plaintiff Aldina asserts two claims: (1) tortious interference with contract/business expectancy and (2) defamation against Defendants.  Dkt. 16.  Plaintiff Aldina requests punitive damages in addition to compensatory damages. *Id.*  Plaintiff First Ridge Associates asserts one claim along with Aldina: (1) tortious interference with contract/business expectancy, also requesting punitive damages in addition to compensatory damages. *Id.*

In the Motion, Defendants move to dismiss Count I, First Ridge Associates as a plaintiff, and the punitive damages claims for failure to state a claim.  Dkt. 18 at 1.  In Defendants' Memorandum in Support of the Motion, which Defendants incorporated into their Motion to Dismiss, Defendants move to strike allegations of "extortion" in Count II, arguing only that this Court did not give Aldina leave

to amend Count II in previously partially dismissing it.  *Id.*; Dkt. 19 at 2.  The Court will analyze each argument in turn.

### A. First Ridge Associates as a Plaintiff

In its previous Memorandum Opinion and Order, this Court dismissed Plaintiff First Ridge Associates as a plaintiff.  Dkt. 14 at 14.  In the original Complaint, Plaintiff First Ridge Associates was named as a plaintiff only for the purposes of Count I, Tortious Interference with Contract/Business Expectancy, which was dismissed without prejudice with leave to amend.  *Id.*; Dkt. 1 ¶ 48.  In its Memorandum Opinion and Order, this Court ordered that "Plaintiffs"—in this case, First Ridge Associates and Giuseppe Michael Aldina—have leave to amend generally.  Dkt. 14 at 14.

In the Amended Complaint, Plaintiffs First Ridge Associates and Aldina again assert a claim against Defendants for Tortious Interference with Contract/Business Expectancy as Count I.  Dkt. 16 ¶ 59.  Defendants argue in their Motion to Dismiss and Memorandum in Support that this Court should dismiss First Ridge Associates as a plaintiff, contending that this Court did not grant First Ridge Associates leave to amend.  Dkt. 19 at 1.  Not so; this Court granted "Plaintiffs" leave to amend.  Dkt. 14 at 14.  Therefore, First Ridge Associates is free to assert claims in the Amended Complaint. However, this does not necessarily mean that the claims should survive Defendants' Motion to Dismiss, for the reasons that follow below.

### B. Count I: Tortious Interference with Contract/Business Expectancy

Plaintiffs First Ridge Associates and Aldina assert claims for tortious interference with contract/business expectancy.  In Virginia, it is well established that the elements of a tortious interference with business expectancy claim are: (i) the existence of a valid business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or causing the breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted.  *Ass'n for Supervision &*

*Curriculum Devel., Inc. v. Int'l Council for Educ. Reform & Dev., Inc., et al.*, 2011 WL 1225750, at *9 (E.D. Va. Mar. 14, 2011) (citing *Century-21 v. Elder*, 239 Va. 637, 641 (1990)).

This Court previously dismissed Plaintiffs' claim for Tortious Interference with a Business Expectancy without prejudice, granted leave to amend, and dismissed First Ridge Associates as a plaintiff. Dkt. 14 at 11. First Ridge Associates has only been a plaintiff for Count I. Dkt. 16 ¶ 60. This Court dismissed the claim because Plaintiffs did not plausibly allege that Kamins lied about whether Aldina had quit or was fired, and whether Kamins made "affirmatively false" statements about the nature of Aldina's compensation requests. Dkt. 14. at 9, 10. This Court also dismissed the claim because Plaintiffs insufficiently alleged that Kamins's statements caused the contract not to be executed. *Id.* at 10.

There was no contract executed, as Defendants note, so Aldina and First Ridge Associates cannot sustain a claim for tortious interference with a *contract*. Dkt. 19. At 6. Plaintiffs acknowledge as much in their Amended Complaint, saying that the "subcontract … *would have been* signed" and that the contract was still "subject to Aldina providing direct deposit information. Dkt. 16 ¶ 40, 58. Therefore, the Court, like the parties, will focus on whether Aldina has stated a claim for tortious interference with a business expectancy.

This Court previously dismissed First Ridge Associates as a plaintiff because Plaintiffs "failed to allege that Defendants knew of the existence of that entity." Dkt. 14 at 11. As this Court previously noted, knowledge of the relationship is an element of a tortious interference claim. *See Ass'n for Supervision & Curriculum Devel., Inc.*, 2011 WL 1225750, at *9 (citing *Century–21 v. Elder,* 239 Va. 637, 641 (1990)); *Chaves v. Johnson*, 230 Va. 112, 120-121 (1985) (holding that "the interferor's knowledge of the business relationship and his intent to disturb it are requisite elements"). In analyzing whether Plaintiffs have adequately pleaded knowledge of a business relationship, Virginia courts have relied on what a "reasonable reader" would infer, analyzing "the facts alleged . . . and the reasonable inferences to be drawn from them." *Hopkins v. Ryan*, 88 Va. App. 137, 160 (2026). In Plaintiffs'

8

Amended Complaint, Plaintiffs include no new facts to plausibly allege that Kamins knew of the existence of First Ridge Associates. Dkt. 16. Rather, Plaintiffs merely restate that Aldina wrote in an email he would work for the client "under a different hat" and add a conclusory analysis to argue that Defendants were put "on notice" by this statement. *Compare* Dkt. 1 ¶ 33, *with* Dkt. 16 ¶¶ 38, 39. A reasonable reading of the statement as alleged does not plausibly suggest that Kamins knew of Aldina's newly-formed limited liability corporation—just that he intended to work for the client in another capacity, not for Meridian. Furthermore, Plaintiffs concede that "Kamins may not have known the name of 'First Ridge Associates.'" *Id.* ¶ 39. One cannot plausibly have knowledge of a relationship between two parties without knowing of the other party's existence. Kamins very well may have known that Aldina was in discussions with Deloitte, but there are no facts in the record to reach the threshold of plausibility that Kamins knew of First Ridge Associates' existence. Therefore, First Ridge Associates should again be dismissed as a plaintiff.

Having dismissed First Ridge Associates as a plaintiff, this Court now turns to Aldina's claim against Kamins. To establish an interference claim, Plaintiff must show that the "interfering party employed 'improper methods.'" *Lee Pappas Body Shop, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 3609296, at *6 (E.D. Va. Aug. 13, 2021) (citing *Duggin v. Adams*, 234 Va. 221, 227 (1987)). Improper methods may include "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, breach of a fiduciary relationship, violation of an established standard of a trade or profession, unethical conduct, sharp dealing, overreaching, or unfair competition." *Preferred Sys. Sols., Inc. v. GP Consulting, LLC*, 284 Va. 382, 404 (2012).

As to the ostensible "improper methods" at issue here, Plaintiff alleges that Kamins made "false and defamatory statements" that led the Navy to launch a security investigation and caused Deloitte not to subcontract with Aldina. Dkt. 16 ¶ 84. Here, Plaintiff alleges that, "on or before August 9," Kamins made false claims to a top Navy official, Walter Ludwig, that Plaintiff had "'extorted' and

9

[sic] the U.S. Navy" by "making monetary demands" and said that "Aldina would abandon the [project]" if such demands were not met. *Id.* ¶ 70. Plaintiff also alleges that Kamins falsely said that he quit the job "abruptly" and "without notice." *Id.*

Aldina alleges these were false because he merely "proposed" that he be paid $85,000 of $100,000 in additional funds from a prior contract due to Aldina's overtime hours. *Id.* ¶ 18. Plaintiff alleges that Kamins offered him 50% of the $100,000 at issue and Aldina declined, saying "no deal." *Id.* ¶ 25. Further, Plaintiff alleges that Kamins was the one who "terminated Aldina's employment." *Id.* ¶ 104. Plaintiff further alleges Kamins "immediately shut off Aldina's" work email and computer access and turned down "two written offers from Aldina to work for at least two more weeks to ensure the smooth transition of his work." *Id.* ¶ 70.

Previously, this Court dismissed the claim because Plaintiff did not plausibly allege that Kamins lied to satisfy "defamation" or "misrepresentation" to satisfy "improper methods" for the purposes of an interference claim when he said Aldina had quit because Plaintiff did not directly allege he was fired. Dkt. 14 at 9. So too here. Plaintiff fails to plausibly allege that he was fired, which would make Kamins's alleged statements that he left "abruptly" a misrepresentation. Although Plaintiff alleges Kamins terminated him on July 30, 2024, he also alleges that on July 30, 2024, Kamins told Navy officials that "Meridian was only notified by Aldina of his immediate departure on that same day." *Compare* Dkt. 16 ¶ 62, *with* Dkt. 16 ¶ 91. Further, Aldina concedes in his Amended Complaint that he told Deloitte officials that "because of irreconcilable differences with Kamins, he had left Meridian Group"—suggesting that he left voluntarily and was not fired. *Id.* ¶ 91. Due to his own admissions, Plaintiff's haphazard Amended Complaint does not plausibly allege that he was fired and, therefore, fails to allege Kamins's statements were affirmatively false. Therefore, Count I will be dismissed on these grounds.

Plaintiff also claims that falsely accusing one of committing extortion is "defamatory per se," which if true, could satisfy the "improper methods" requirement to support a tortious interference

10

claim. Dkt. 16 at 103; *see Lee Pappas Body Shop, Inc. Co.*, 2021 WL 3609296, at *6 (E.D. Va. Aug. 13, 2021). However, this Court raised another issue in dismissing Plaintiff's original tortious interference claim: insufficient pleading of causation. Dkt. 14 at 10. To satisfy causation, a plaintiff must plead that a defendant's actions "proximately" caused the end result. *Center for Excellence in Higher Educ., Inc. v. Accreditation Alliance of Career Schs.*, 2023 WL 6282840, at *7 (E.D. Va. Sept. 26, 2023). Proximate cause is established by "an act or omission that, in natural and continuous sequence unbroken by a superseding cause, produces a particular event and without which that event would not have occurred." *Williams v. Joynes*, 278 Va. 57, 62 (2009). In this case, Plaintiff again fails to plausibly allege that Kamins's statements caused the contract not to be executed beyond conclusory claims ("As a result of that meeting [with Kamins], McGhee directed Ludwig to find a replacement candidate for Aldina") and second-hand explanations without direct evidence from the actual decision-maker ("Savena was told by Ludwig via email to 'find another candidate' instead of Aldina 'due to McGhee's concerns'") that the decision-maker, Michael McGhee, opted not to hire Aldina because of the accusation. Dkt. 16 ¶¶ 72, 73. Therefore, Count I should be dismissed because it fails to plausibly allege causation and "improper methods."

### C. Count II: Defamation

This Court previously dismissed Count II "only to the extent it relies on the statements that Aldina requested a raise or quit." Dkt. 14 at 14. In Plaintiff's Amended Complaint, Aldina alleges Kamins's knowingly false statements to support a defamation claim were that Aldina had committed "extortion," and quit "abruptly" and "without notice." Dkt. 16 at 103.

Defendants claim that this Court did not grant leave to amend as to Count II, and therefore, allegations of "extortion" should be stricken. Dkt. 19 at 2. This claim is incorrect. This Court's order gave Plaintiff "LEAVE TO AMEND" generally without reference to specific counts. Dkt. 14 at 14. Defendants did not move to strike other parts of Count II for any reason other than this argument or to dismiss Count II. Therefore, Count II will proceed, and the Motion to Dismiss is denied in this respect.

11

### D. Punitive Damages

This Court previously dismissed Plaintiff's request for punitive damages with leave to amend because Plaintiff's allegations of malice were "largely conclusory," and Plaintiff did not allege on what basis punitive damages would be available. *Id.* at 13. Plaintiff has again requested punitive damages in his Amended Complaint because he alleges Defendants "acted with malice and with reckless disregard for the truth" in statements that Plaintiff alleges triggered an investigation into Aldina. Dkt. 16 ¶¶ 81, 85, 88, 111.

In Virginia, punitive damages are not granted in garden variety cases. Instead, punitive damages require a showing of "malicious" or "willful or wanton conduct." *Booth v. Robertson*, 236 Va. 269, 271 (1988). For defamation cases by private individuals against non-media defendants, "a recovery of punitive damages must be based upon the *New York Times* actual malice standard that is applicable to media defendants, that is, clear and convincing proof of knowledge of falsity or reckless disregard for the truth." *Gazette, Inc. v. Harris*, 229 Va. 1, 13 (1985) (describing the holding in *Fleming v. Moore*, 221 Va. 884 (1981)). Plaintiff does not discuss the relevant standards, but makes threadbare, conclusory statements that Kamins "acted with malice." Dkt. 111.

Defendants have moved to dismiss the claim for punitive damages, arguing Plaintiff's allegations are "largely conclusory" and fail to show a "reckless disregard" for the truth. Dkt. 19 at 8, 9. Given the nature of Aldina's claims, Aldina has not made a plausible claim that there is "clear and convincing" proof of knowledge of falsity or reckless disregard for the truth to support punitive damages under *Gazette Inc.* Dkt. 16 ¶ 104. This, the claim for punitive damages will again be dismissed.

\*\*\*

Given the deficiencies noted, coupled with the fact that Plaintiff has previously been granted leave to amend and is represented by counsel, further amendment appears futile and thus Plaintiff will not be permitted leave to amend again.

IV. CONCLUSION

Accordingly, it is hereby

ORDERED that Defendants' Motion to Dismiss (Dkt. 18) is GRANTED-IN-PART and DENIED-IN-PART; and it is

FURTHER ORDERED that Count I is DISMISSED WITH PREJUDICE; and it is

FURTHER ORDERED that Plaintiff First Ridge Associates is DISMISSED with prejudice as a plaintiff; and it is

FURTHER ORDERED that Defendants' Motion to Strike allegations of "extortion" in Count II is DENIED; and it is

FURTHER ORDERED that the request for punitive damages is DISMISSED with prejudice; and it is

FURTHER ORDERED that a scheduling order shall issue promptly as to the remaining count.

It is SO ORDERED.

Alexandria, Virginia
July 27, 2026

_____/s/_____
Rossie D. Alston, Jr.
United States District Judge